**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | |
|---|---|
| **EARTH SCIENCE TECH, INC.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**CROMOGEN BIOTECHNOLOGY CORPORATION,** *et al.***,**<br><br>**Defendants.** | Case No. 9:14-cv-81622-RLR |

### AMENDED[1] MOTION TO RE-OPEN CASE AND LIFT STAY, CONFIRM FINAL ARBITRAL AWARD, AND DISMISS COMPLAINT

Defendant Cromogen Biotechnology Corporation ("Cromogen"), through its counsel, respectfully submits this Motion to Re-Open Case and Lift Stay pursuant to this Court's Order dated January 23, 2015. ECF No. 5. Cromogen also moves to confirm a final arbitral award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. The award was rendered in favor of Defendant Cromogen and against Plaintiff Earth Science Tech, Inc. ("Plaintiff" or "EST") on June 8, 2018 by an arbitral tribunal seated in New York, New York. The Court should confirm the award and dismiss Plaintiff's Complaint based on the doctrines of *res judicata* and collateral estoppel.

### BACKGROUND

This action, which was originally filed in Florida state court on November 25, 2014, primarily concerns the business relationship between Plaintiff and Defendant Cromogen. *See* Complaint, ECF No. 1-2. Plaintiff alleged that Cromogen breached a Distribution Agreement for CBD-rich hemp oil (the "Distribution Agreement"), a dietary and medical supplement, by

---

[1] Amended only to incorporate Local Rule 7.1(a)(3) Certificate of Good Faith Conference.

providing oil that purportedly did not meet the concentrations required by the Distribution Agreement. *Id.* ¶ 14. Plaintiff further alleged that the individual defendants, who are Cromogen's executives, purportedly misinformed Plaintiff about quality analysis of the product. *Id.* ¶ 27. Plaintiff also sued Impact UA, Inc., ("Impact UA") a company related to one of the individual defendants, alleging that it was somehow complicit in the purported wrongdoings. *Id.* ¶ 39. Though Plaintiff sued multiple defendants, the true dispute was always between Plaintiff and Defendant Cromogen.

The Distribution Agreement between Plaintiff and Defendant Cromogen contained an explicit arbitration clause stating as follows:

> ARBITRATION CLAUSE:
>
> Governing Law and Venue. This Agreement and performance by the parties hereunder shall be construed in accordance with the laws of the State of New York, U.S.A., without regard to provisions on the conflict of laws. Both parties submit to exclusive International Arbitration through JAMS International using UNCITRAL Rules in New York, NY. U.N. Convention on International Sale of Goods shall not apply to this Agreement.

ECF No. 1-2, Exh. A, p. 6 (a copy of the Distribution Agreement is also attached to this Motion as Exhibit "A").

The only defendant served with the original Florida state court action was Defendant Impact UA. No other defendants have been served. Accordingly, it was Impact UA, which removed this case to this Court. *See* Notice of Removal, ECF No. 1. On January 7, 2014, Defendant Impact UA filed a Motion to Dismiss or, Alternatively, to Compel Arbitration and For a Stay, in part, based on the stay provision of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ECF No. 3. On January 23, 2015, this Court issued a Consent Order and stayed the matter in all respects until such time as the parties notify the Court that arbitration proceedings have concluded. ECF No. 5. The Court stated that this "case shall be re-opened upon motion by any

2

Party." *Id.* This Court also noted that the parties "have agreed that it is appropriate under the circumstances to stay this proceeding in full until arbitration proceedings conclude and to hold the Motion to Dismiss in abeyance until that time." *Id.* at 1.

Arbitration was commenced and pursued by Defendant Cromogen, which was a party to the Distribution Agreement and which is now filing the present Motion. Arbitrators were selected by the Plaintiff and Defendant Cromogen, and the Presiding Arbitrator (collectively the "Tribunal") was appointed on February 25, 2015. After an extensive exchange of pleadings and submission of witness statements and expert reports, the Tribunal held a five-day hearing between November 30, 2015 and December 4, 2015 at JAMS in New York City. Closing arguments were held at a later date. Due to various delays, the closing arguments were ultimately heard in May and June of 2017 via videoconference. At the hearing, both parties, through counsel, presented their arguments and evidence to the Tribunal.

The Tribunal issued a final award on June 8, 2018. A true and correct copy of the final award is attached hereto as Exhibit "B" (to be filed under seal pending Court approval)[2] (the "Final Award"). In its 42-page carefully reasoned opinion, the Tribunal ruled in favor of Cromogen with respect to its claims for breach of contract, conversion, and tortious interference, and denied Plaintiff's claim for breach of contract against Cromogen. Consequently, the Tribunal ordered Plaintiff to pay Cromogen the following amounts:

    a. [Paragraph 142 of the Final Award -- Redacted]

    b. [Paragraph 143 of the Final Award -- Redacted]

    c. [Paragraph 144 of the Final Award -- Redacted]

---

[2] Cromogen has contemporaneously filed a Motion to File Final Arbitration Award Under Seal. Should the Court grant this motion, Cromogen will then file the Final Arbitration Award as prescribed in the Local Rule 5.4(b) and the CM/ECF Administrative Procedures.

      d.  [Paragraph 148 of the Final Award -- Redacted]

The Final Award became binding on the parties upon issuance. *See* UNCITRAL Arbitration Rules, Art. 34(2) ("All awards shall be … final and binding on the parties. The parties shall carry out all awards without delay."). On June 18, 2018, Cromogen sent a letter to Plaintiff seeking voluntary compliance with the Final Award. However, to date, Plaintiff has failed to satisfy the Final Award.[3] Defendant Cromogen is now seeking to re-open the case and lift the stay in order to confirm the Final Award against Plaintiff and to dismiss the Complaint.

## DISCUSSION

**A.**    **The Court Should Re-Open this Case and Lift the Stay**

Because arbitration proceeding has been concluded, Defendant Cromogen respectfully requests this Court to re-open this case and lift the stay pursuant to this Court's Order dated January 23, 2015 (ECF No. 5) in order to pursue confirmation of the Final Award and dismissal of the Plaintiff's Complaint.

**B.**    **The Final Award Should Be Confirmed Pursuant to the Provisions of the Panama Convention and Its Implementing Legislation**

The Final Award falls under the Panama Convention and implementing sections of the FAA, which requires confirmation of international arbitral awards, and none of the grounds permitted by the Panama Convention for refusal to confirm apply in this case.

      *1.*    *The Final Award Falls Under the Panama Convention*

The Inter-American Convention on International Commercial Arbitration (opened for signature Jan. 30, 1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245) (the "Panama Convention"),

---

[3] On July 16, 2018, Plaintiff submitted an application to the Tribunal requesting to correct an alleged "computation error" in determining the amount of damages. Defendant Cromogen objected to the Plaintiff's application. On August 2, 2018, the Tribunal's denied Plaintiff's application.

*incorporated by reference in* 9 U.S.C. § 302, applies to the confirmation of the award in this case because Defendant Cromogen is a citizen of El Salvador and Plaintiff is a citizen of the United States, *id.* ¶¶ 2-3, and both El Salvador and the United States are parties to the Panama Convention, *see* General Information of the Treaty, http://www.oas.org/juridico/english/sigs/b-35.html.

An award falls under the Panama Convention, if: (i) the award arises from a "commercial" relationship; (ii) the award concerns a defined legal relationship, whether contractual or not; and (iii) the award arises out of the relationship, which is not entirely between the citizens of the United States. *See* 9 U.S.C. § 202 *incorporated in* 9 U.S.C. § 302; *see also* Restatement (Third) U.S. Law of Int'l Comm. Arb. § 1-1 cmt. h (Am. Law Inst., Tentative Draft No. 1, 2010).

Here, all three prongs of Section 202 are easily satisfied. First, the Final Award arose out of a commercial relationship involving Defendant Cromogen's agreement to designate Plaintiff as its exclusive distributor to formulate, market and sell CBD (Cannabidiol) rich hemp oil to public companies trading on the OTC/Pink Sheet exchanges. *See* Final Award ¶ 1. Second, the Final Award clearly concerned a defined legal relationship between Defendant and Plaintiff—the Tribunal found that Plaintiff breached both contractual and non-contractual duties to Defendant Cromogen based on Plaintiff's failure to pay for shipments already made as well as for conversion and tortious interference. *Id.* ¶¶ 85, 111, and 120.

Accordingly, the Final Award falls under the Panama Convention and should be confirmed in an expedited manner in accordance with its terms and applicable provisions of the FAA.

### 2. *The Panama Convention Requires a Court to Confirm the Final Award in an Expedited and Summary Proceeding*

The Panama Convention confers international arbitration awards the "force of a final judicial judgment." Panama Convention art. 4. Section 207 of the FAA, which provides for confirmation of awards under the Panama Convention, requires a court to confirm the award only subject to limited grounds for refusal specified in the convention. *Id. incorporated in* 9 U.S.C. § 302; *see EGI-VSR, LLC v. Coderch Mitjans*, No. 15-20098-CIV, 2018 WL 2465345, at *2 (S.D. Fla. June 1, 2018) (Scola, J.) ("confirmation of an arbitral award falling under the Panama Convention is mandatory unless a court finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention") (quotations and citations omitted).

"A district court's review of a foreign arbitration award is quite circumscribed" and "there is a general pro-enforcement bias manifested in the Convention." *Four Seasons Hotels & Resorts B.V. v. Consorcio Barr, S.A.*, 613 F. Supp. 2d 1362, 1366, 1367 (S.D. Fla. 2009) (Moore, J.) (quotations and alterations omitted). The confirmation of an arbitral award under the Panama Convention is intended to be an expedited and summary procedure. *See Empresa De Telecommunicaciones De Bogota S.A. E.S.P. v. Mercury Telco Grp., Inc.*, 670 F. Supp. 2d 1357, 1361 (S.D. Fla. 2009) (Marra, J.).

The Eleventh Circuit has explained that "[t]he Convention, and American enforcement of it through the FAA, 'provide[] businesses with a widely used system through which to obtain domestic enforcement of international commercial arbitration awards resolving contract and other transactional disputes, subject only to minimal standards of domestic judicial review for basic fairness and consistency with national public policy.'" *Indus. Risk Insurers v. M.A.N.*

6

*Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440 (11th Cir. 1998).[4] "[R]eview of arbitration decisions by the courts is 'extremely narrow and exceedingly deferential' . . . In fact, '[j]udicial review of arbitration awards is among the narrowest known in the law.'" *First State Ins. Co. v. Banco de Seguros del Estado*, 254 F.3d 354, 357 (1st Cir. 2001) (quotations and citations omitted).

In sum, because the Final Award falls under the Panama Convention, its confirmation should occur on an expedited basis and is subject only to the limited exceptions set out explicitly by the treaty.

### 3. *Plaintiff Cannot Establish Any of the Grounds for Refusal to Confirm Recognized by the Panama Convention*

This Court should confirm the Final Award because it is subject to the Panama Convention, and none of the limited grounds permitted for refusal to confirm are applicable. Again, Section 207 of the FAA provides that the federal courts should confirm a foreign arbitration award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in" the Panama Convention. 9 U.S.C. § 207 *incorporated in* 9 U.S.C. § 302; *see Indus. Risk Insurers v. M.A.N. Gutcheffungshutte GmbH*, 141 F.3d. 1434, 1441 (11th Cir. 1998).

Article 5 sets forth an exhaustive list of the grounds on which a court may refuse recognition and execution. Panama Convention art. 5. These grounds can be described generally as: (a) incapacity of the parties or invalidity of the arbitration agreement, (b) denial of due

---

[4] Although the *Industrial Risk Insurance* case was decided under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") rather than the Panama Convention, both treaties are analogous. Because "[t]here is no substantive difference between [the Panama Convention and the New York Convention]," *Corporacion Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploracion Y Produccion*, 832 F.3d 92, 105 (2d Cir. 2016), cert. dismissed, 137 S. Ct. 1622 (2017), "precedents under one are generally applicable to the other," *Coporacion Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploracion y Produccion*, 962 F. Supp. 2d 642, 654 (S.D.N.Y. 2013) (citing *Productos Mercantiles e Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 45 (2d Cir. 1994)).

process, (c) an award rendered in excess of authority, (d) failure to conduct the arbitration in accordance with the parties' agreement or, in the absence of agreement, with the law of the arbitral site, and (e) the award is not binding or has been annulled or suspended in the country of origin. *Id.*, art. 5(1). A court where confirmation is sought may also refuse recognition if, under the law of that State, the dispute was not arbitrable or the award contravenes public policy. *Id.*, at 5(2); *see Empresa De Telecom. De Bogota*, 670 F. Supp. 2d at 1361-62. Article 5 makes it clear that the party opposing confirmation of an award bears the burden of proof in any challenge to its validity. *See Empresa De Telecom. De Bogota*, 670 F. Supp. 2d at 1361-62.

None of the grounds for refusing recognition of a final award pursuant to the Panama Convention exists in this case. First, the parties' agreement to arbitrate is clearly valid and neither party was under some incapacity. In fact, Plaintiff itself used the Distribution Agreement as a basis for bringing claims against defendants in this action. *See* ECF No. 1-2 at 3. Second, Plaintiff was given a proper notice and participated in the arbitration proceeding through counsel, Final Award ¶ 3, submitted witness statements and an expert report, *id.* ¶ 13, and presented its case at the hearing, *id.* ¶ 14, which lasted for five days followed by closing arguments held by telephonic conference, *id.* ¶ 15. Third, the Final Award is limited in scope only to those issues raised by the parties and properly subject to arbitration under the terms of the parties' arbitration clause.[5] Fourth, the composition of the Tribunal was in accordance with the agreement of the parties, which called for the arbitration to be administered by JAMS International using UNCITRAL Rules. *Id.* ¶¶ 5, 7. Fifth, the Final Award became binding on the parties immediately when issued. *See* UNCITRAL Arbitration Rules, Art. 34(2) ("All awards shall be

---

[5] Plaintiff challenged the authority of the Tribunal to hear conversion and tortious interference claims, Final Award ¶ 96, but the Tribunal rejected Plaintiff's contention, *id.* ¶ 99, holding that these claims fall within the scope of the Arbitration Clause and are subject to Tribunal's arbitral jurisdiction, *id.* ¶¶ 103.

… final and binding on the parties. The parties shall carry out all awards without delay."). The Final Award has not been annulled or suspended. Sixth, the subject matter of the parties' dispute—claims arising out of the Distribution Agreement—is undeniably capable of settlement by arbitration.

Importantly, confirmation of the Final Award would be in keeping with public policy in the United States, which favors honoring parties' contractual agreements, and would not be contrary to any "explicit public policy" that is "well-defined and dominant … [and is] ascertained 'by reference to the laws and legal precedents and not from general consideration of supposed public interests.'" *Indus. Risk*, 141 F.3d at 1445.

Ultimately, the Plaintiff cannot set forth a sufficient basis upon which any of the aforementioned exceptions would apply in this case. As such, nothing prevents this Court from confirming the Final Award, and the Panama Convention and applicable law mandate that this Court duly confirm the Final Award.

**C.     Plaintiff's Complaint Should Be Dismissed Based on the Principles of *Res Judicata* and Collateral Estoppel**

Cromogen also moves for the dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted. Quite clearly, the claims asserted by Plaintiff, which are based on the business relationship predicated on a contract between the parties, are matters that were or could have been raised in the arbitration. Arbitration has a preclusive effect on all of the Plaintiff's claims. As such, Plaintiff's Complaint should be dismissed based on the principles of *res judicata* and collateral estoppel.

*1.     Res Judicata Applies to the Claims Brought by the Plaintiff in this Action*

"Res judicata is a doctrine of claim preclusion; it refers to 'the preclusive effect of a judgment in foreclosing relitigation of matters that should have been raised in an earlier suit.'"

9

*Hart v. Yamaha–Parts Distrib., Inc.*, 787 F.2d 1468, 1470 (11th Cir. 1986) (quoting *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, (1984)). The purpose behind the doctrine "is that the 'full and fair opportunity to litigate protects a party's adversaries from the expense and vexation of attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.' " *Ragsdale v. Rubbermaid, Inc.,* 193 F.3d 1235, 1238 (11th Cir. 1999) (quoting *Montana v. United States,* 440 U.S. 147 (1979)). "Claim preclusion 'extends not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact.'" *Hart,* 787 F.2d at 1470 (quoting *Olmstead v. Amoco Oil Co.,* 725 F.2d 627, 632 (11th Cir. 1984)).

The doctrine of *res judicata* applies with the same force to arbitral awards, similar to judgments entered by a court. *Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352 (11th Cir. 1985) ("[T]he determination of issues in an arbitration proceeding should generally be treated as conclusive in subsequent proceedings."); *City of Gainesville, Fla. v. Island Creek Coal Sales Co.,* 618 F.Supp. 513, 517 (N.D. Fla. 1984) ("Valid arbitration decisions are accorded *res judicata* and collateral estoppel effect.").

A party seeking to invoke the doctrine of *res judicata* must establish four elements: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." *In re Piper Aircraft Corp.,* 244 F.3d 1289, 1296 (11th Cir. 2001). A court should also determine "whether the claim in the new suit was or could have been raised in the prior action; if the answer is yes, *res judicata* applies." *Id.*

All four elements of *res judicata* are established in this case. First, the Arbitral Tribunal clearly was a court of competent jurisdiction pursuant to the Arbitration Clause of the Distributorship Agreement concluded between Plaintiff and Defendant Cromogen. Second, there is also no dispute that the Final Award is tantamount to a final judgment on the merits for the purposes of *res judicata*. Third, privity includes a variety of circumstances including where the parties were officers, director, or affiliates of the party in the proceedings where the original claims have been litigated. *See Freecharm Ltd. v. Atlas Wealth Holdings Corp.*, No. 11-20003-CIV, 2011 WL 4591929, at *7 (S.D. Fla. Sept. 30, 2011), aff'd, 499 F. App'x 941 (11th Cir. 2012) (holding that the doctrine of *res judicata* precludes plaintiff from asserting liability against defendants for the actions of their subsidiaries through their direction, control and management of the parent company, while simultaneously arguing that there is no privity between the parties; also precluding claims against individual defendants acting in their capacities solely as officers for the defendant company). Fourth, causes of actions in this litigation and the JAMS arbitration arose out of the same nucleus of operative facts that is a contract pursuant to which Defendant Cromogen appointed Plaintiff as its distributor of CBD-rich hemp oil. *See Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183 (11th Cir. 2003) (citing *In re Piper,* 244 F.3d at 1297). Finally, all of the claims brought in this lawsuit were or could have been brought in the arbitration.

### 2. *Plaintiff's Claims Are Precluded by Collateral Estoppel*

For the same reasons, Plaintiff's claims are barred by the doctrine of collateral estoppel, which applies where: (1) the issue at stake is identical to the one alleged in the prior action; (2) the issue was actually litigated in the prior action; (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the prior action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the prior action. *Greenblatt,* 763 F.2d at 1360. All of the issues raised by Plaintiff in

this litigation—breach of the contract between the parties, delivery of the product, identification of the product subject to the contract, invoice issued by Impact UA, Inc.—were effectively adjudicated by the Tribunal. Plaintiff fully and fairly litigated those issues in arbitration. The determination of these issues were necessary for the Tribunal to issue the Final Award. Accordingly, Plaintiff's claims are barred by the doctrine of collateral estoppel.

### C. <u>Cromogen is Entitled to Prejudgment Interest</u>

Cromogen requests that the Court award prejudgment interest on the arbitration award as parties are generally entitled to prejudgment interest on the award from the date of the award through the date of entry of judgment by the court. The Final Award specifically awards post-award interest to Cromogen. Final Award ¶¶ 142-144, 148. Federal courts confirming arbitration awards have routinely allowed post-award, prejudgment interest. *See, e.g., Carey Rodriguez Greenberg & Paul, LLP v. Arminak*, 583 F.Supp.2d 1288, 1292 (S.D. Fla. 2008); *In re Arbitration Between Westchester Fire Ins. Co. v. Massamont Ins. Agency, Inc.*, 420 F.Supp.2d 223, 226 (S.D.N.Y. 2005) ("Post-award, prejudgment interest is generally awarded at the discretion of the district court, and there is a presumption in favor of awarding such interest.").

Accordingly, Cromogen is entitled to prejudgment interest as set forth in the Final Award.

### D. <u>Cromogen is Entitled to Attorneys' Fees</u>

Defendants should be awarded their attorneys' fees. *See Swiss Inst. of Bioinformatics v. Global Initiative on Sharing all Influenza Data*, 49 F. Supp. 3d 92, 98 (D.D.C. 2014) ("a party seeking to confirm a foreign arbitral award under the New York Convention may recover reasonable attorneys' fees and costs, at least where the respondent unjustifiably refused to abide

by the arbitral award.").[6] Here, Plaintiff has unjustifiably refused to satisfy the award despite being requested to do so. Cromogen is being compelled to file this Motion to secure the relief that Plaintiff should have voluntarily provided. Accordingly, Cromogen is entitled to an award of attorneys' fees in connection with this action to confirm arbitral award, in an amount to be set forth in subsequent submissions.

## CONCLUSION

For the foregoing reasons, Cromogen respectfully requests that this Court enter an Order to re-open this case and lift the stay, confirm the award, enter judgment thereon, and dismiss this case. A copy of the proposed Order granting this Motion to Re-Open the Case, Lift Stay, Confirm Arbitral Award, and dismissing the case is attached hereto as Exhibit "C."

---

[6] *See Emp'r Ins. of Wausu v. Banco De Seguros Del Estado*, 199 F.3d 937, 942 (7th Cir. 1999) (holding that the court looks to case law construing the meaning of the New York Convention as a means to interpret the Panama Convention).

## **CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Dated: August 16, 2018

*/s/ M. Derek Harris*
M. Derek Harris
Florida Bar No. 097071
CARLTON FIELDS JORDEN BURT, P.A.
CityPlace Tower
525 Okeechobee Blvd., Ste. 1200
West Palm Beach, FL 33401-6350
Ph: (561) 659-7070
Fax: (561) 659-9191
dharris@cfjblaw.com

and

Gene M. Burd
DC Bar No. 100430*
ARNALL GOLDEN GREGORY LLP
1775 Pennsylvania Avenue NW, Suite 1000
Washington, DC 20006
Tel: (202) 677-4048
Fax: (202) 677-4049
gene.burd@agg.com
*pro hac vice motion to be submitted when case is re-opened*

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all parties.

Dated: August 16, 2018

*/s/ M. Derek Harris*
M. Derek Harris
Florida Bar No. 097071
CARLTON FIELDS JORDEN BURT, P.A.
CityPlace Tower
525 Okeechobee Blvd., Ste. 1200
West Palm Beach, FL 33401-6350
Ph: (561) 659-7070
Fax: (561) 659-9191
dharris@cfjblaw.com

*Attorney for Defendant*